[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties intermarried in Orange, Connecticut on September 9, 1990. Both have resided continuously in this state since that time. There are no minor children issue of the marriage.
The evidence presented at trial has clearly established the allegation that the marriage has irretrievably broken down. Judgment may enter dissolving the marriage on that ground.
The court has carefully considered the criteria set forth in §§ 46b-81 and 46b-82 C.G.S. in reaching the decisions reflected in the orders that follow.
The parties have been married for approximately eight years. The plaintiff is 50 years of age and in fair health. She owns a hair salon and is gainfully employed as a hairdresser. She earns $650 per week. This is her second marriage. The defendant is 61 years of age. In September 1992, he retired from the railroad as a result of a fall and open heart surgery. He presently receives a disability pension of approximately $1929.54 per month. This is his third marriage. The defendant earned approximately $50,000 per year when he was employed by the railroad. The plaintiff was earning approximately $32,000 per year at the time the parties married.
The defendant's health is also fair. He had open heart surgery in 1992 and has a thyroid condition controlled by medication. He spends a portion of the winter months in Florida.
11 Batt Lane, West Haven Property
CT Page 14172
The parties jointly own the Batt Lane property. At the time of the marriage in September 1990, the plaintiff owned the Batt Lane property with her former husband. She was obligated to pay her former husband $500 per month.
In 1993, the plaintiff and the defendant bought the former husband's one-half interest in Batt Lane and the plaintiff and the defendant obtained an $80,000 first mortgage for this purpose. From the mortgage proceeds, $67,000 was used to pay off the plaintiff's former husband and the balance was placed in the Webster Bank or in the New Haven Savings Bank. The parties lived there until October 1996. The parties agreed that the fair market value of the property is $110,000 and it is subject to a mortgage of approximately $75,000.
In April 1998, during the pendency of this action, the plaintiff entered into a lease of these premises for $1075 per month commencing May 1, 1998 and terminating April 30, 1999. The plaintiff has retained the net income from the rental after payment of the mortgage, taxes and insurance on the property. The plaintiff also agreed to give the tenants the option to purchase the leased premises for the sum of $110,000 at any time during the tenancy with 30 days notice to the plaintiff. The defendant did not participate in this lease nor was he consulted concerning any of its terms.
159 Grand Street, West Haven
The parties jointly own 159 Grand Street, West Haven currently occupied by the plaintiff (and her mother). This property was formerly owned by the plaintiff's mother, Josephine Perrone. In 1992, Josephine Perrone transferred her home to her son Anthony for $50,000. It was apparently agreed between Josephine and Anthony that Josephine would continue to live in this home with her son. The plaintiff was given $25,000 (from the $50,000 purchase price) which she put into her safe deposit box.
In January 1996, the brother Anthony decided to marry and offered to sell this home to the plaintiff. The plaintiff and defendant agreed to purchase this property for $70,000. There was an understanding that the mother would live with the plaintiff and the defendant in these premises for so long as she desired. The mother testified that if her daughter, the plaintiff, and the defendant did not buy this home, the property would have to be placed on the market and be sold. Josephine Perrone is 77 years CT Page 14173 old and has lived in this house for over 40 years.
The plaintiff claims her mother has a life use of the property which reduces its fair market value from $110,000 to $57,533.
Josephine Perrone did not reserve a written life use to herself when she deeded the property to her son Anthony Perrone in 1992. Anthony Perrone did not carve out a written life use to Josephine Perrone when he conveyed the premises to the plaintiff and the defendant. Based on the evidence and testimony presented, this court concludes that there was not a life use reserved to Josephine Perrone enforceable against the defendant. The oral agreement or understanding that Josephine Perrone would live in the home with the plaintiff and the defendant does not create a life use.
In January 1996, the plaintiff and the defendant purchased 159 Grand Street, West Haven, from the plaintiff's brother for $70,000. The parties obtained a mortgage for $55,000. The balance of the money came from the parties' cash held in the safe deposit box. The plaintiff claims it was $25,000 which was the money she had received in 1992. The defendant claims it was $15,000 from joint funds held in the safe deposit box. The safe deposit access chart (Joint Exhibit #11) shows that it was the defendant who made three trips to the box during the period of January 18, 1996 to February 1, 1996 — although the closing was held on January 31, 1996. The parties made capital improvements to the property and moved into the premises in October 1996. The plaintiff's two adult children occupied the basement apartment of the premises and the plaintiff, defendant and plaintiff's mother occupied the first floor. The plaintiff could not have obtained a mortgage without the defendant.
This property has been appraised and the parties agree this property has a fair market value of $110,000 subject to a mortgage of approximately $53,000.
Safe Deposit Box
The plaintiff claims the only cash in the safe deposit box was the $25,000 she received from her family in 1992. The safe deposit box access record indicates 15 visits by the plaintiff to this box up to January 1996. The dates and times would not be consistent with the removal and replacement of jewelry as claimed CT Page 14174 by the plaintiff. The court also notes no amount as to value of jewelry was listed on plaintiff's financial affidavit. Neither party believes in banks and both kept sums of cash either in their home, hidden, or in the safe deposit box.
The defendant claims he put in $16,500 from his Amity Bank savings into the safe deposit box along with his cashed-in Vanguard distribution of $10,008. The defendant last went to the safe deposit box in June 1996. He claims there was $50,000 in the box. There is a dispute as to whether the sum of $10,000 given to the parties by Mr. Rourke went into the safe deposit box or the New Haven Savings Bank book. Needless to say, there is nothing in the box at this time.
The defendant was last in the safe deposit box on June 26, 1996. Thereafter, the plaintiff went into the box on four separate occasions. The plaintiff closed out this box and opened a new one in March 1997. There were no records presented to show that the defendant's savings and Vanguard distribution were deposited into any savings account. The parties' 1995 income tax return reflects the Vanguard distribution.
If in fact the Rourke $10,000 and the defendant's Vanguard distribution of $10,000 were placed in the New Haven Savings account, those sums have long been dissipated.
The plaintiff withdrew $6,000 from the New Haven joint savings account on July 17, 1997. The plaintiff claimed $3,000 of this amount was given to the defendant's son and the balance used for a trip to Aruba.
On July 17, 1997, the plaintiff had access to and went into the safe deposit box. The defendant claims that this $6,000 New Haven Savings Bank withdrawal went into the safe deposit box. The defendant's son did not testify about receiving this $3,000 from the plaintiff.
The plaintiff's son did not testify about receiving a net of $37,000 from a personal injury case which amount was deposited into the son's account in March 1998. The defendant suspects this money was cash taken by the plaintiff from the safe deposit box and deposited into the son's account. The safe deposit access records ended with the July 17, 1997 access by the plaintiff.
Both parties had difficulty with credibility. As Shakespeare CT Page 14175 one said, "Oh, what a tangled web we weave when first we practice to deceive."
It is against this background that the following orders are entered. The court declines to assess fault to either party for the break down of the marital relationship.
Alimony
Neither party is awarded alimony.
Real Estate
1. The property located at 11 Batt Lane, West Haven, Connecticut shall be placed on the market for sale at a listing price or $110,000 as soon as legally possible. The parties shall agree as to any reduction in this listing price. The parties shall accept any offer within three percent of the listing price.
2. Until such time as the property is sold, the plaintiff shall continue to receive the rental income and shall be responsible for the payment of the mortgage, taxes and homeowner's insurance on said property. The plaintiff shall not make any substantial repairs to the premises without conferring and discussing the same with the defendant. The monthly net
rental proceeds shall be equally divided between the parties each month until the property is sold.
3. The court shall retain jurisdiction over any disputes concerning the real estate and the sale thereof.
4. Upon the sale of the premises, the net proceeds after payment of the mortgage, taxes, real estate commission, usual closing costs and attorney's fees shall be divided 50% to the plaintiff and 50% to the defendant.
159 Grand Street, West Haven, Connecticut
1. The defendant shall quitclaim his interest in the real estate located at 159 Grand Street, West Haven, Connecticut to the plaintiff forthwith. The plaintiff shall be responsible for the mortgage, taxes and insurance and shall hold the defendant harmless therefrom.
2. The plaintiff shall execute a mortgage deed and note to CT Page 14176 the defendant in the amount of $25,000 payable $5,000 per year, with the first payment of $5,000 due and payable on June 30, 1999 and yearly thereafter.
Miscellaneous
1. On June 30, 1997, the New Haven Savings Bank book had a balance of $13,168.92. The defendant shall receive one-half of this amount which is $6,034.46. Said sum shall be paid to the defendant by the plaintiff on or before December 31, 1998.
2. The 1996 Pontiac motor vehicle shall be the sole property of the plaintiff. The defendant shall execute whatever documents are necessary for this purpose. The plaintiff shall be solely responsible for the loan on this motor vehicle and shall indemnify and hold the defendant harmless therefrom.
3. The defendant shall have no claim to the plaintiff's business "Starchaser." Said business shall remain the sole property of the plaintiff.
4. Each party shall retain their own respective pension and retirement plans including IRA's and insurance policies.
5. The 1992 Pontiac shall be the sole property of the defendant. The defendant shall be responsible for any motor vehicle loans on his car and shall hold the plaintiff harmless.
6. Each party shall be responsible for the debts and liabilities as listed on their respective financial affidavits.
7. Each party shall be responsible for their respective counsel fees.
Medical Insurance
1. The defendant shall pay one-half of the cost of the premium for medical insurance for so long as the defendant can be carried on the plaintiff's medical insurance policy.
2. At trial, the defendant agreed to reimburse the plaintiff the sum of $435.32 representing his share of the medical premium and it is so ordered.
Income Tax Refund
CT Page 14177
The parties shall equally divide the income tax refund and rebate. The plaintiff shall be entitled to credit for whatever sums she paid on behalf of the defendant (his one-half).
Coppeto, J.